UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATSY ANN MARTIN | CIVIL ACTION |
| VERSUS | NO. 11-2955 |
| MICHAEL J. ASTRUE, COMMISSIONER<br>SOCIAL SECURITY ADMINISTRATION | SECTION "J" (3) |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.   BACKGROUND**

Plaintiff filed an application for SSI on January 7, 2009, alleging a disability onset date of January 1, 2007. (Adm. Rec. at 14, 220). Plaintiff alleged disability due to lung disease, asthma and boils under both arms. (*Id.* at 221). Plaintiff, born on July 22, 1960, was 47 years old on the date on which she alleged disability and 51 years old at the time of the final administrative decision. (*Id.* at 216). Plaintiff has a ninth-grade education and past work experience as a janitor/housekeeper and a florist. (*Id.* at 226, 229).

Defendant initially denied plaintiff's application on April 20, 2009. (*Id.* at 82-83). Plaintiff sought an administrative hearing, which the agency held on January 4, 2011. (*Id.* at 33-64). Plaintiff, Woodrow A. Janese, an expert specializing in neurosurgery, and vocational expert ("VE") Deborah A. Bailey testified at the hearing.

On January 20, 2011, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff did not meet the definition of disability through the date of the decision. (*Id.* at 14-27). In the decision, the ALJ concluded that plaintiff has the severe impairments of cervical/lumbar disc disease and chronic obstructive pulmonary disease. (*Id.* at 16). The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 17). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work. (*Id.* at 20). He concluded that plaintiff could perform her past work as a florist. (*Id.* at 26). The ALJ thus denied plaintiff's application for SSI. (*Id.* at 27).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she was not disabled. (*Id.* at 10). On October 3, 2011, the Appeals Council denied plaintiff's request. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.  STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez*

v. *Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or

4

combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are two issues on appeal:

(1) Whether the ALJ accorded the proper weight to plaintiff's treating physicians.

(2) Whether the ALJ erred when he failed to consider the effect of plaintiff's numerous required medications when assessing plaintiff's ability to work.

## V. ANALYSIS

### 1. Whether the ALJ accorded the proper weight to plaintiff's treating physicians.

The ALJ must follow the guidelines set forth in Social Security Report ("SSR") 96–2p to determine whether "controlling weight" should be given the medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source"; (2) the opinion must be a "medical opinion"; (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 92–2p.

The factors provided in 20 C.F.R. §§ 404.1527 and 416.927 include: (1) examining relationship; (2) treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) supportability; (4) consistency; and (5) specialization. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Shave v. Apfel*,

238 F.3d 592, 595 (5th Cir. 2001); *Newton*, 209 F.3d at 456. Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990). However, specialization is only one of several factors considered in the evaluation of medical opinions. In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when substantial evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Moore*, 919 F.2d at 905. Indeed, even when a court should afford considerable weight to a treating physician's diagnosis, the "ALJ has sole responsibility for determining a claimant's disability status." *Newton*, 209 F.3d at 455 (citing *Greenspan*, 38 F.3d at 237).

Plaintiff here argues that the ALJ failed to accord proper weight to the opinions of her treating physicians Drs. Michell and Olson and improperly accorded great weight to the opinions of Drs. Trahant and Janese. Plaintiff contends that Michell saw her no less than seven times in 2009, and Olson saw her no less than 11 times between October 2009 through January 2011. Plaintiff notes that Trahant examined her once at the request of defendant, and Janese examined only her records and has never even met her. Plaintiff maintains that the factual circumstances here are similar to those in *Newton*, in which the Fifth Circuit held that an ALJ abused his discretion when he rejected the opinion of a claimant's treating physician in favor of that of a physician who had merely reviewed the claimant's medical records.

While the Court admits that the issue here is a close call, the Court is mindful of the limitation that it may not try the issues *de novo*, re-weigh the evidence, or substitute its own

7

judgment for that of the Commissioner. *Carey,* 230 F.3d at 135. Having reviewed the record, the Court finds that substantial evidence supports the ALJ's decision to accord greater weight to the opinions of Trahant and Janese than to those of Michell and Olson. The ALJ adequately explained his reasons for doing so and outlined all of the objective medical evidence in the record.

Here, the ALJ properly did not reject the opinions of Michell and Olson but only accorded them less weight than those of Trahant and Janese. He concluded that Michell and Olson were plaintiff's physicians-in-litigation, and their opinions were thus biased. (Adm. Rec. At 23). He noted that Olson speculated on plaintiff's asthma and its limitations even though he did not specialize in asthma. (*Id.*). The ALJ noted that plaintiff's asthma had never required hospitalization or intervention by a physician on an emergency basis in spite of her smoking two packs of cigarettes per day. (*Id.*). He further noted that her asthma did not preclude her from performing her work as a housekeeper/janitor at a medical facility. (*Id.*).

The ALJ found that plaintiff's most recent chest x-rays indicated no current active cardiopulmonary issues and that her lungs were clear to auscultation. (*Id.*). And while Olson opined that plaintiff is totally and permanently disabled, the ALJ noted that she maintains full range of motion and is basically neurologically intact even though she has age-appropriate degenerative changes. (*Id.*). The ALJ further noted that Olson had never performed a functional capacity evaluation to determine the possibility of any work limitations or restrictions. (*Id.*).

And while Michell concluded that plaintiff suffered from pain, he also determined that she had full range of cervical spine. (*Id.*). During six examinations between May and September 2009, Michell also noted that plaintiff's deep tendon reflexes were 2+ and equal, that her strength, motor

8

and sensory functioning were within normal limits, and that she repeatedly denied numbness, tingling or weakness of her extremities. (*Id.* at 347-49, 351-56, 358-59). Trahant concluded that plaintiff had no muscle spasm, demonstrated intact cranial nerves and no sensory deficits. (*Id.* at 366). During his motor examination, Trahant found normal muscle tone, strength and bulk. (*Id.*). Her gait was normal, and "tandem walking done well." (*Id.*). Her reflexes were normal and symmetrical. (*Id.*). And there were no objective signs of any abnormalities on examination of the cervical and lumbar area. (*Id.*). Trahant concluded that plaintiff retained the ability to reach overhead, reach in all directions, handle, finger, feel, push and pull objects on a frequent basis. (*Id.* at 369).

Both Michell and Olson also treated her complaints of pain with only conservative measures, such as steroid injections, pain medication and muscle relaxants. (*Id.* at 348, 350, 352, 354, 356, 425-27, 430). As the Fifth Circuit has noted, a conservative course of treatment undermines a plaintiff's allegations of severe and disabling pain. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

Accordingly, and for the foregoing reasons, the Court finds that substantial evidence and good cause exists for the ALJ's conclusion to accord greater weight to the opinions of Trahant and Janese than to those of Michell and Olson. The ALJ properly concluded that even though supported, the opinions of Michell and Olson were inconsistent with other substantial, objective medical evidence.

2. **Whether the ALJ erred when he failed to consider the effect of plaintiff's numerous required medications when assessing plaintiff's ability to work.**

9

Plaintiff contends that the medications that she takes render her drowsy and force her to stay close to bed, thus disabling her from work. Plaintiff notes that, in response to a hypothetical, the vocational expert, Deborah Bailey, testified at the oral hearing that *if* plaintiff's medications render her drowsy, then there are no jobs available to her. Plaintiff contends that even Janese opined that if plaintiff takes her medications as prescribed, it would affect her ability to work. Apart from citations to Bailey's testimony at the oral hearing, plaintiff points to no evidence in the record to support her argument.

The Court's review of the record reveals that plaintiff complained to Olson in 2009 that her medications were rendering her drowsy and sedating. (Adm. Rec. at 290). Olson changed plaintiff's medication to Darvocet and opined that the new drug "should mitigate her drowsiness a bit and afford some substantial pain relief." (*Id.*). Apart from this subjective complaint, the Court finds no other evidence in the record that plaintiff's medications are so sedating that they disable her from working. In other words, after Olson changed her prescription, there is no evidence in the record of any complaints by plaintiff that her medication was so sedating that it rendered her unable to work. And despite Janese's opinion that plaintiff's medication would *affect* her ability to work, plaintiff has cited the Court to no evidence in the record – and the Court has found none – that he opined that plaintiff's medication wholly precluded her from work. That a claimant's medication may affect her ability to work does not necessarily lead to the conclusion that the same medication renders her totally disabled from working. The ALJ thus did not commit reversible error when he failed to consider the alleged sedating effects of her medication.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusions here. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 3rd day of January, 2013.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**